Eastern District of Kentucky
**FILED**
MAR 19 2015
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

UNITED STATES OF AMERICA EX REL.
MICHAEL SEAN MCBRIDE                                    PLAINTIFF/RELATOR

v.                       **COMPLAINT**                   5:15-CV-69-DCR

PURPLE SHOVEL, LLC                                       DEFENDANT

COMPLAINT TO BE FILED IN CAMERA AND UNDER SEAL

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

Comes the Plaintiff/Relator, Michael Sean McBride, by and through his undersigned counsel, and for his cause of action against the above-named Defendant herein states as follows:

## PARTIES

1.  The Plaintiff/Relator, Michael Sean McBride, (referred to hereinafter as "McBride"), was at all times relevant hereto an employee of the United States Government, GS 13, at the Program Executive Office for Special Operations Forces Support Activity (PEO SOFSA) for the United States Special Operations Command (USSOCOM) Bluegrass Station, Lexington, Kentucky and is and was at all times stated herein a citizen and resident of Winchester, Clark County, Kentucky.

2.  The Defendant, Purple Shovel, LLC, (referred to hereinafter as "Purple Shovel Lex") acting at all times stated herein through its agents, servants and employees, is and was at all times stated herein a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business in Lexington, Kentucky, for the purpose, among other purposes, of providing global transportation and logistics services to the United States Government through logistics, procurement and program management. Many, if not all, of these activities and contracts stated herein have been and are being carried out at USSOCOM

Bluegrass Station, Lexington, Fayette County, Kentucky, and the agent for service of process is: Benjamin David Worrell, 5749 Briar Hill Road, 224 B, Lexington, Kentucky 40156.

3. The Defendant, Purple Shovel, LLC, (referred to hereinafter as "Purple Shovel Tampa") acting at all times stated herein through its agents, servants and employees, is and was at all times stated herein a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Tampa, Florida, and is organized and existing under the laws of Delaware for the purpose, among other purposes, of providing global transportation and logistics services to the United States Government through logistics, procurement and program management. Many, if not all, of these activities and contracts stated herein have been and are being carried out at USSOCOM Bluegrass Station, Lexington, Fayette County, Kentucky, and the agent for service of process is: Law Office of Leighton J. Hyde, P.A., located at 3430 W. Kennedy Boulevard, Tampa, Florida 33609.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over the Defendant pursuant to 28 U.S.C. § 1331, where jurisdiction to redress claims arising under the laws of the United States is specifically provided in 31 U.S.C. § 3730(h), the "whistleblower" statute.

5. This court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) which provides that any action brought under 31 U.S.C. § 3730 "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Here, the acts or transactions in question occurred in Lexington, Fayette County, Kentucky, in the Eastern District of Kentucky.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the occurrences at issue occurred in Lexington, Fayette County, Kentucky, in the Eastern District of Kentucky.

## GENERAL ALLEGATIONS

7. The Defendant provides global transportation, logistics procurement and program management to the United States Government through contracts with the United States Government.

8. At all times relevant, the Defendant named herein, acting through its agents, was and is required, through contracts with the United States Government, executed at the USSOCOM at Bluegrass Station, Lexington, Kentucky, to adhere to the proper rules for acquiring contracts and extending contracts with the United States Government.

9. At all times stated herein, the Defendant submitted bills for payment or caused bills for payment to be submitted to the United States Government.

10. This is a "whistleblower" case filed by Plaintiff/Relator McBride, against the Defendant, Purple Shovel. The Plaintiff/Relator McBride is and was at all times working as a GS 13 in Strategic Initiative and Business Planning for PEO and SOFSA to ensure that contracts were properly executed from pre-award through full execution.

11. In 2014, the Plaintiff/Relator McBride, in the course of his official duties, observed evidence that contracts between the United States Government and the Defendant Purple Shovel were not being executed in accordance with the applicable regulations and statutes from pre-award through full execution. Evidence was observed that the Defendant Purple Shovel, through its agents, servants, and employees was being offered unfair advantage in the bidding of contracts through an inside relation with United States Government employees and Defendant Purple Shovel and was being given inside information such that the Defendant Purple Shovel had an unfair competitive advantage on bidding on contracts which effectively excluded other contractors from bidding.

12. The Defendant Purple Shovel defrauded the United States Government through its contacts and relationship with a government civilian contracting officer by: (a) wrongfully

developing and/or increasing procurement requirements with or for SOF operators; (b) willfully establishing a competitive advantage over any other potential competitors by reviewing, generating, and/or acquiring requirements in advance of any request for proposal or competitive bidding process; (c) knowingly accepting numerous sole source contracts by utilizing false claims and statements within the Justification and Authorization (J&A) process and (d) all of the above resulting in the unjust enrichment of the Defendant at the expense and to the detriment of the United States Government.

### LEGAL BACKGROUND- FEDERAL FALSE CLAIMS ACT

13. The False Claims Act, ("FCA"), 37 U.S.C § 3729-3733, originally enacted in 1863 during the Civil War, was substantially amended by the False Claims Amendments Act of 1986 and signed into law on October 17, 1986. Congress enacted these amendments to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees who act in furtherance of the purposes of the False Claims Act.

14. The FCA provides that any person who knowingly submits a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $10,000 for each such claim, plus three times the amount of damages sustained by the Government, and attorneys' fees. The FCA allows any person having information regarding a false or fraudulent claim against the Government to bring a private cause of action for himself and on behalf of the Government and to share in any recovery. The complaint is to be filed under seal for 60 days (without service on the Defendant during such 60-day period) to enable the Government: (a) to conduct its own investigation without the defendant's knowledge and (b) to determine whether to join the action.

## LAWS GOVERNING INTERACTIONS BETWEEN GOVERNMENT EMPLOYEES AND CONTRACTORS

15. Several regulations provide guidance for federal employees in the federal acquisition process. Before contractor personnel are invited to a meeting, the employee must ensure that it is proper for the contractor to have the information that will be disclosed during the meeting. Some of this information is protected by the Procurement Integrity Act, 41 U.S.C. § 423, and the criminal law prohibiting the release of confidential information, 18 U.S.C. § 1905 (the Trade Secrets Act).

16. The Procurement Integrity Act provides that improper disclosure of bidder proposal or source selection information subjects the disclosing party to criminal and civil liability. 41 U.S.C. § 423(a), (e).

17. The Trade Secrets Act provides that, unless authorized by law, an employee may not publish or disclose any information (a) that comes to him/her in the course of his/her employment or official duties, and (b) that concerns or relates to the trade secrets, processes, operations, style of work or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. 18 U.S.C. § 1905.

18. A Government employee may not disclose non-public information to further the private interest of any individual, company, or organization. 5 C.F.R. § 2635.703. Information fitting this description includes, but is not limited to; any information concerning a contract that the Government employee obtains through her Government employment and reasonably should know has not been made available to the public.

19. A Government employee must ensure that any information he or she discloses is in compliance with the various restrictions concerning disclosure of Government information.

20. Categories of information that should not be released include: (1) classified information; (2) Planning, Programming, Budgeting and Execution System (PPBE) information; (3) contractor proprietary information; (4) unsolicited proposal information; (5) internal agency communications; (6) source selection information; and (7) a release of information that would create an unfair competitive advantage. AFMC Attorney's Guide to Acquisition Reform, paragraph 4.1.2.

21. Release of acquisition information is governed by 48 C.F.R. § 14.211 *et seq*, which provides, "Information concerning proposed acquisitions shall not be released outside the Government before solicitation except for pre-solicitation notices in accordance with 14.205 or 36.213–2, or long-range acquisition estimates in accordance with 5.404, or synopses in accordance with 5.201. Within the Government, such information shall be restricted to those having a legitimate interest. Releases of information shall be made (1) to all prospective bidders, and (2) as nearly as possible at the same time, so that one prospective bidder shall not be given unfair advantage over another." More generally, Government employees have an ethical obligation not to allow the use of nonpublic Government information in the furtherance of any private interest. 5 C.F.R. § 2635.101(b)(3).

## FACTUAL BACKGROUND

22. The Plaintiff/Relator McBride gained knowledge of Government contracting protocols through his daily work in the oversight, procurement, and execution of Government contracts. The Plaintiff/Relator McBride regularly interacted with numerous Government contractors throughout his tenure with the United States military and in civilian Government employment.

23. Penny Davis Petee (Ms. Petee) is a warranted contracting officer for the United States Government, working for the United States Special Operations Command as a Department of Air Force Government civilian.

24. Ms. Petee has performed extensive contractual actions as both a contracting specialist and a contracting officer for USSOCOM as both a contractor and Government civilian from approximately 2001 to present. Ms. Petee currently works at PEO SOFSA at Bluegrass Station awarding classified and unclassified contracts on behalf of USSOCOM and the Department of Defense.

25. John Rogers is Ms. Petee's supervisor.

26. The United States Special Operations Command (USSOCOM), Special Operations Forces Acquisition Technology & Logistics (SOF AT&L), Program Executive Office-Special Operations Forces Support Activity (PEO-SOFSA) facilitates the execution of certain pre-competed ten-year Contract Logistics Support Services (SOF-CLSS) Contract, currently awarded to Lockheed Martin to provide logistical sustainment support to SOF operators.

27. The Defendant Purple Shovel, by and through its agents, servants, and employees, including but not limited to Benjamin Worrell (Worrell), provides global transportation and logistics services to the United States Government through logistics, procurement, and program management.

28. Worrell maintained, and to the best of Plaintiff/Relator knowledge, information, and belief continues to maintain, inappropriate contacts with Ms. Petee which led to Ms. Petee and Mr. Rogers awarding the Defendant Purple Shovel a series of direct sole source contracts from on the present date, to procure equipment and supplies, and logistical services for certain specified CONOP missions that require critical Congressional, Department of Defense, and USSOCOM oversight to ensure maximum compliance with Federal Acquisition Regulations and International Traffic in Arms Regulations.

29. Additionally, during this time period, Ms. Petee awarded sole source contracts to the Defendant Purple Shovel to procure SOF-peculiar equipment for certain funded programs of record that are traditionally competed for and awarded through the competitive process.

30. Ms. Petee worked with Mr. Mike Rowan, Acquisition Program Manager for the SPEAR program, to procure certain equipment, and Mr. Jerry Coburn, PM Counter proliferation to procure spares to grant these sole source award contracts to the Defendant Purple Shovel.

31. Mr. David Riley was the contracting specialist, working for Ms. Petee at the time of all these contract awards to the Defendant Purple Shovel, and assisted Ms. Petee with the documentation to award the contracts to the Defendant Purple Shovel.

32. Mr. Steve Bonk and Mr. Tim Lueker were program managers and contracting officers from Lockheed Martin engaged with Ms. Petee to award numerous contractual actions for similar procurements and services on certain specified contracts, one or both providing bid proposals that furnished legitimate and necessary competition for alternative award options without the need for a sole source award to the Defendant Purple Shovel.

33. In her official capacity, Ms. Petee issued requests for purportedly competitive contractors. However, in this process, Ms. Petee, skillfully and with the assistance of the Defendant Purple Shovel, structured the proposals to include such narrowing language, specifications, and requirements, which the bargained-for terms could only apply to the Defendant Purple Shovel.

34. For instance, on June 26, 2014, Ms. Petee released a sources sought on "Federal Business Opportunities" website (Solicitation Number: H9225414R0001) that:

> "The United States Special Operations Command (USSOCOM) Special Operations Forces Support Activity (SOFSA), on behalf of the war-fighter, is seeking Service-Disabled Veteran-Owned Small Business (SDVOSB) sources. The specific objective of this request was to identify potential sources with mature logistical and supply capabilities and that have intimate & in-depth knowledge of the

>International Traffic in Arms Regulations (ITAR) in order to ship items to any country on a regular basis."

The sources sought contained specific details such as in Paragraph 3, Section E, "Must have an office and warehouse on the African Continent (Uganda or Kenya)" that narrowed the field of applicable responders to only the Defendant Purple Shovel.

35. Mr. Steve Bonk, an agent of Lockheed Martin, suggested in a recorded conversation that all readers of the solicitation within the defense industry knew that the solicitation was written to be applicable to a specific company.

36. In July 2014, Worrell and the Defendant Purple Shovel were specifically invited to PEO-SOFSA Bluegrass Station, Lexington, Kentucky by Ms. Petee to review and discuss procurement and logistical requirements for existing and future CONOPS with the Acquisition Ops, PM, Mr. Mike Ellis. The Defendant Purple Shovel was the only contractor allowed to participate in the Government meeting, despite the history of and requirement for competitive bidding for these operations.

37. On July 17, 2014, Mr. Steve Bonk of Lockheed Martin sent an email stating "Penny, I assume the meeting with your customer excludes Purple Shovel as well? - Steve" Ms. Petee replied on July 17, 2014 at 7:31 a.m., "I'm not sure why you are asking this. It is not any of LM's business."

38. The only logical reason for excluding other potential contractors from the July meeting is that Ms. Petee wanted to ensure a competitive advantage for the Defendant Purple Shovel.

39. Regarding the email, Ms. Petee implies that it was none of LM's business why the Defendant Purple Shovel was the only contractor invited. The meeting referred to is clearly at odds with the requirement that Government employees not engage in financial transactions that

use nonpublic Government information or allow the improper use of such information in the furtherance of a private interest. 5 C.F.R. § 2635.101(b)(3).

40. In August 2014, Worrell traveled with Mr. Mike Ellis to Germany to meet with SOCAFRICA and discuss future procurement requirements specifically for a specific contract.

41. Additionally, On December 8, 2014, PEO-SOFSA requested a Rough Order of Magnitude (ROM) from its SOF CLSS contractor, Lockheed Martin, to procure equipment and supplies provided for a specific contract.

42. During this timeframe, Worrell contacted Mr. Tim Allen, a Lockheed employee, in order to inquire whether Lockheed Martin was contacting vendors to price equipment and supplies for these specific contracts.

43. Worrell informed Mr. Allen during said conversation that he had formulated the contract requirements long before the ROM was requested, and that the business belonged to the Defendant Purple Shovel.

44. On December 11, 2014, as a result of the aforementioned scheme the Defendant Purple Shovel received a sole source contract award despite a viable and proper competitive offer from Lockheed Martin to PEO SOFSA. The United States Government, therefore, was defrauded through an unnecessary sole source award of this contract to the Defendant Purple Shovel.

45. Additionally, documents submitted by the Defendant Purple Shovel through Wide Area Work Flow to receive final payments for each of these contracts contained no information detailing the inventory, quantities, transportation codes, equipment or packing list customarily provided by a vendor to account for the actual receipt and accountability of items in accordance with Department of Defense regulations and USSOCOM Directive 37-13.

46. The documentation submitted for each contract contains material inconsistencies and errors for services and/or supplies acquired and provided with no quantifiable way to track,

inventory, or audit what was procured (e.g. 1 "Lot" of goods or services provided) presumably for the sole purpose of realizing financial gain in favor of at the Defendant Purple Shovel and at the expense of the United States Government.

47. No validation or audit for accountability has been conducted by the Defendant Purple Shovel or the Government to ensure all equipment, supplies, and services that were paid for have been officially received by the United States Government, leading to the reasonable presumption that said items may either have not been delivered, insufficiently supplied, or ultimately in the possession of enemy combatants or otherwise unauthorized third parties.

48. The Defendant Purple Shovel was enabled in the furtherance of its scheme to defraud the United States Government, by Ms. Petee, who not only let the underlying contracts to the Defendant Purple Shovel, but moreover utilized or otherwise leveraged her superior leadership position to (1) improperly assume responsibility for the payment of said contracts and (2) act as the property book officer by confirming the delivery of the asset or assets, both of which require separate parties to ensure contractual compliance, accountability of assets, and national security.

49. The known damages to the United States Government for associated contracts awarded for Supplies and Services to the Defendant Purple Shovel are in excess of the $75,000 minimal jurisdictional amount of this Court.

50. On December 12, 2014, the Plaintiff/Relator McBride filed a complaint detailing much of the above-stated information with the Inspector General's office of the Department of Defense.

51. On January 15, 2015, the Plaintiff/Relator McBride and Danny Simon met with agents of the United States Air Force OSI in Lexington, Kentucky where McBride detailed more of the above described information.

52. On January 29, 2015, the Plaintiff/Relator McBride met with an Agent of the Federal Bureau of Investigation and an Assistant United States Attorney in Lexington, Kentucky and detailed much of the above described information.

53. Since disclosing this information, the Plaintiff/Relator McBride has been moved to a position from which no promotion is possible, despite his history of steady upward progress and demonstrated record of success. The only conclusion is that McBride has been reassigned by his supervisors as a retaliatory measure for his good faith disclosure of Purple Shovel's fraudulent activity.

### COUNT I

### Violations of False Claims Act, 31 U.S.C. § 3729(a)(1), (a)(2)

54. The Plaintiff/Relator McBride realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

55. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et *seq.* as amended.

56. As a result of Defendant Purple Shovel's actions stated hereinabove, the Defendant herein knowingly made, used, or caused to be made or used, or made or used in deliberate ignorance or reckless disregard to falsity, false or fraudulent records or statements to obtain payment or approval for payment by the United States Government in violation of 37 U.S.C. 3729(a)(10 and (a)(2).

57. As a result of Defendant Purple Shovel's actions stated hereinabove, the Defendant Purple Shovel herein had possession, custody, or control of property or money used, or to be used by the United States Government and, intending to defraud the Government or willfully conceal the property, delivered, or caused to be delivered, less property than the amount for which the Defendant had initially contracted.

58. As a result of Defendant's actions stated hereinabove, the Defendant Purple Shovel conspired in a scheme to defraud the United States by making or using or presenting or causing to be made, used or presented, false or fraudulent records or statements and false or fraudulent claims for approval or payment to the United States Government.

59. The United States Government, which was unaware of the falsity of the claims and/or records or statements made, used and/or submitted by the Defendant Purple Shovel and in reliance on the accuracy thereof, paid the Defendant Purple Shovel for goods which did not conform to contracted-for specifications.

60. The United States Government, has been damaged by reason of these payments in an amount in excess of the $75,000 minimal jurisdictional requirement of this Court.

**WHEREFORE,** the Plaintiff/Relator, Michael Sean McBride, on behalf of himself and the United States Government, prays for judgment against the Defendant as follows:

1) That the Defendant cease and desist from violating 31 U.S.C. § 3729 et *seq.;*

2) That this Court enter judgment against the Defendant in an amount equal three times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $10,000 for each violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

3) That, in the event the United States Government continues to proceed with this action, the Plaintiff/Relator is awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of this action or the settlement of the claim;

4) That, in the event the United States Government does not proceed with this action, the Plaintiff/Relator is awarded an amount that the Court determines is

reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of this action or the settlement of the claim;

5) That Plaintiff/Relator is awarded all costs incurred in this action, including attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d);

6) That Plaintiff/Relator is awarded pre-judgment interest;

7) Trial by jury; and

8) That the United States Government and the Plaintiff/Relator be granted all such other relief as the Court deems just and proper.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF/RELATOR

WILLIAM R. GARMER
JEROME P. PRATHER
Garmer & Prather, PLLC
141 North Broadway
Lexington, Kentucky 40507
Telephone: (859) 254-9351
Facsimile: (859) 233-9769

JOHN E. NORMAN
Thurman, White & Anderson
333 W. Vine Street, Suite 207
Lexington, Ky 40507
(859) 252-1690

BURL R. MCCOY
Stoll, Keenon, & Ogden, L.L.P
300 W. Vine St., Suite 2100
Lexington, Ky 40507-1801
(859) 231-3094

_____
WILLIAM R. GARMER

Page 14 of 14